IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GABRIEL ARRIES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | 1:21-CV-03588-SDG |
| | ) | |
| VICTOR HILL, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Victor Hill, Rashawn Johnson, James Stewart, Jr., Jelani Foster, Montez Hawkins, Sydney Cannon, David Evans, and Benjamin Walker, Jr. (hereinafter "defendants") file this memorandum of law in support of their motion to dismiss plaintiff's complaint (Doc. 1).

## I.    INTRODUCTION

This is a Section 1983 civil rights lawsuit filed by plaintiff Gabriel Arries ("plaintiff") who complains of his treatment while he was incarcerated at the Clayton County Jail ("CCJ").  (Doc. 1.)  Plaintiff alleges that on February 5, 2021, he was arrested for disorderly conduct at the Hartsfield-Jackson Airport by Atlanta Police Department and then transported to the CCJ.  (Id., ¶ 20.)  Upon arrival, plaintiff admits that he was "combative" and shouted "racial epithets at the

Sheriff's deputies." (<u>Id.</u>, ¶¶ 21-23.)  Plaintiff criticizes his treatment thereafter and alleges that he was subject to multiples incidents of force by defendants at the CCJ, including being physically struck, placed in a restraint chair, and tased.  Plaintiff also alleges that he was placed in suicide watch and had an altercation with his cellmate.  Plaintiff ultimately was transported to Atlanta Medical Center, where he alleges that he was diagnosed with a brain injury.  (<u>Id.</u>, ¶¶ 24-33.)

Based on the foregoing, plaintiff now brings this action against eight Sheriff's Office defendants – Sheriff Victor Hill, Rashawn Johnson, James Stewart, Jr., Jelani Foster, Montez Hawkins, Sydney Cannon, David Evans, and Benjamin Walker, Jr. – as well as "John Does 1-2" all in their individual capacities.  Under Section 1983, plaintiff alleges excessive force claims in violation of the Fourteenth Amendment against Johnson, Stewart, Hawkins, Foster, Cannon, Evans, and Walker (Count I), a supervisory liability claim against Sheriff Hill (Count II), and a deliberate indifference to a serious medical need claim in violation of the Fourteenth Amendment against all defendants (Count IV).  Under Georgia law, plaintiff asserts claims of assault, battery, and reckless conduct against Johnson, Stewart, Hawkins, Foster, Cannon, Evans, and Walker, only (Count III).  Based on these claims, plaintiff also seeks compensatory and punitive damages as well as attorney's fees under Section 1988.  (Count V and Prayer for Relief.)

Defendants now move to dismiss all of plaintiff's claims against them for several reasons.  **First**, plaintiff's federal claims are barred by qualified immunity. **Second**, plaintiff's state law claims are barred by official immunity.  **Third**, plaintiff's claims against the "John Doe" defendants are subject to dismissal because fictious party practice is not permitted in federal court. **Finally**, given that plaintiff's underlying claims are subject to dismissal, plaintiff's claims for punitive damages and attorney's fees are subject to dismissal as well, and plaintiff's complaint otherwise fails to allege facts to support these claims.  For these reasons, plaintiff's complaint should be dismissed.

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Plaintiff's Federal Claims Are Barred By Qualified Immunity (Counts I, II, and IV)

Qualified immunity "shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." Mullenix v. Luna, 136 S.Ct. 305, 308 (2015).  Significantly, the immunity is "from suit rather than a mere defense to liability."  Mitchell v. Forsyth, 472 U.S. 511, 525 (1985).  As such, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

To claim qualified immunity, defendants must first show that they were performing discretionary functions. Barnes v. Zaccari, 669 F.3d 1295, 1303 (11th Cir. 2012).   Plaintiff alleges that all defendants are sued in their "individual capacity for acts committed during the course and scope of [their] employment," as sworn members of the Clayton County Sheriff's Department, and acting under color of law.   (Doc. 1, ¶¶ 5-12, 18-19.) Therefore, there is no dispute that defendants were acting within their discretionary authority for purposes of qualified immunity.  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).   Plaintiff, in turn, bears the burden of demonstrating that defendants are not entitled to qualified immunity.  Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004).  To meet his burden, plaintiff must show that: (1) each defendant violated his constitutional rights, and (2) each defendant's conduct was prohibited by clearly established law.  Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014).  As shown below, plaintiff cannot meet his burden on both of these prongs.  Therefore, defendants are entitled to qualified immunity.

## 1.    No Constitutional Violation

### a.    *Physical Force And Use Of Restraint Chair*

"The Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment." Jacobs v. Georgia, No. 20-10036, 2020 U.S. App. LEXIS 21125, at *9 (11th Cir. July 8,

2020) (citing <u>Kingsley v. Hendrickson</u>, 576 U.S. 389 (2015)).   "[A] pretrial detainee's Fourteenth Amendment excessive-force claim is governed by a rule of 'objective reasonableness.'" <u>Patel v. Lanier Cty. Ga.</u>, No. 19-11253, 2020 U.S. App. LEXIS 25345, at *9 (11th Cir. Aug. 11, 2020) (citing <u>Kingsley</u>, 576 U.S. at 389).  This objective reasonableness standard mirrors the standard an arrestee must meet to plead a violation of the Fourth Amendment. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989) (stating that in an excessive force case the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them); <u>Piazza v. Jefferson Cty.</u>, 923 F.3d 947, 953 (11th Cir. 2019) ("the Fourteenth Amendment standard has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment.").

This is a fact specific inquiry based on "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight," taking into account the legitimate need of jail officials to maintain order and discipline in their facilities. <u>Kingsley</u>, 576 U.S. at 396-97.  In determining the reasonableness of the force used, courts consider several factors, including, but not limited to:

> the relationship between the need for the use of force and the amount of force used; the extent of plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at

> issue; the threat reasonably perceived by the officer; and
> whether the plaintiff was actively resisting.

Id. at 397.

Here, plaintiff alleges that he arrived at the CCJ after being arrested by Atlanta Police for disorderly conduct at the Hartsfield-Jackson Airport.  (Doc. 1, ¶ 20.) Upon arrival, plaintiff was combative and shouted racial epithets at Sheriff's deputies, so he was pinned to the wall, forced to the ground, and carried to the shower dress out area where plaintiff alleges that he was "struck" by Stewart, Johnson, Hawkins, Cannon, and Walker and placed in a restraint chair.  (Id., ¶¶ 23-27.) Plaintiff alleges that this conduct constitutes excessive force in violation of his rights under the Fourteenth Amendment.  (Id., ¶¶ 36-37.)

The physical force used in response to plaintiff's combative behavior and abusive and threating hate speech was objectively reasonable under the totality of the circumstances.  Indeed, at best, defendants' alleged conduct constitutes a de minimis use of physical force to maintain order and to control a combative and unruly detainee. The use of force was objectively reasonable.[1]  Piazza, 923 F.3d at

---

[1] The decisions rendered in Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000), and Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997) are instructive.  In Vinyard, the Eleventh Circuit concluded that where an officer grabbed the plaintiff's arm, jerked her out of a chair, handcuffed her behind her back, and later dragged her into the jail by either her shirt, arm, or hair, the force applied was de minimis.  Vinyard, 311 F.3d at 1349 n.13.  Likewise, in Nolin, the Eleventh Circuit held that where an officer grabbed the plaintiff from behind by the shoulder and wrist, threw him against a

953 ("legitimate interests"—including the need to "preserve internal order and discipline" and "maintain institutional security"—may at times require jail officers to use force).

As for the use of the restraint chair, courts have held that when restraints are not used for the purpose of inflicting pain, their use does not violate the constitution.  See, e.g., Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991) (affirming summary judgment to the defendants and finding that there was no constitutional violation because the restraints were not used to inflict pain, but were ordered to prevent plaintiff from encouraging unrest in a volatile prison situation and to protect the prison officials).  Here, plaintiff arrived at the CCJ on a charge of disorderly conduct and became combative and started shouting racist remarks.  The use of the restraint chair under these circumstances was objectively reasonable.  Therefore, plaintiff's complaint fails to allege a constitutional violation based on the physical force and use of the restraint chair.

---

van, kneed him in the back, pushed his head into the side of the van, searched his groin in an uncomfortable manner, and handcuffed him, the force applied was *de minimis*.  Nolin, 207 F.3d at 1258-59.  Finally, in Jones, the Eleventh Circuit found that where an officer slammed the plaintiff against a wall, kicked his legs apart, required him to put his arms above his head, and pulled his wallet from his pants, the force applied was *de minimis* notwithstanding any pain the plaintiff experienced from "having to lift his arms since he had previously suffered a stroke," and notwithstanding any pain the plaintiff experienced from "his arthritic knee from having his legs kicked apart." Jones, 121 F.3d at 1460.

###### b.   *Placement In Medical Holding Cell With Another Inmate*

A jailer's deliberate indifference to a known and substantial risk of serious harm to an inmate is a constitutional violation. See Helling v. McKinney, 509 U.S. 25 (1993); Marsh v. Butler Cnty., 268 F.3d 1014, 1028 (11th Cir. 2001). A jailer may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825 (1994).

Here, plaintiff alleges that he suffers from bipolar and mood disorder and that Evans believed that plaintiff "wanted to kill himself."  (Doc. 1, ¶¶ 20, 28.) Plaintiff alleges that Foster and Evans placed him "on suicide watch in medical holding cell 7 with another inmate" where an altercation allegedly occurred.  (Id., ¶¶ 28, 29, 51, 53.)  To the extent plaintiff is asserting a failure to protect claim based on this altercation, plaintiff fails to allege sufficient facts to support a constitutional violation. Plaintiff's allegations independently support the decision to place plaintiff in a medical holding cell and under suicide watch.  Although plaintiff claims he had an altercation with his cellmate, plaintiff fails to allege any facts to show that Evans or Foster subjectively knew that this was going to occur. Thus, plaintiff fails to allege facts to demonstrate that Evans or Foster acted with deliberate    indifference    to    plaintiff's    safety.        Holley    v.    Doe,    No.

3:19cv150/RV/EMT, 2019 U.S. Dist. LEXIS 159928, at *11 (N.D. Fla. Aug. 28, 2019) (placement of "high custody" inmates in plaintiff's "low custody" dorm without subjective knowledge that doing so placed plaintiff at risk of serious harm insufficient to establish constitutional inability).[2]

### c.    Use Of Taser

Plaintiff alleges that Foster tased him during the altercation between plaintiff and his cellmate.  (Doc. 1, ¶¶ 29-30.)  Under the objective reasonableness standard enunciated above, however, the use of the taser (non-lethal force) under the totality of the circumstances was justified for institutional safety and to break-up the altercation, and presumably to avoid injuries to plaintiff, his cellmate, and others.

---

[2] See, e.g., Goodman v. Kimbrough, 718 F.3d 1325 (11th Cir. 2013) (finding no evidence that jail officials were subjectively aware of a risk of harm to pretrial detainee who was severely beaten by cellmate, and that officials deliberately disregarded that risk, because officers' failure to conduct cell checks and head counts and their deactivation of emergency call buttons constituted negligence but did not justify constitutional liability under § 1983); Carter v. Galloway, 352 F.3d 1346 (11th Cir. 2003) (finding inmate failed to establish claim for deliberate indifference based on prison officials' failure to protect inmate from attack by cellmate; although prison officials knew that cellmate was a "problem inmate" with a well-documented history of prison disobedience and had been prone to violence, and specific notice had been provided by inmate that cellmate was acting crazy and roaming his cell like a "caged animal," officials' generalized awareness of risk did not satisfy the subjective awareness requirement); Reid v. Polk, No. 3:14-CV-1408, 2018 U.S. Dist. LEXIS 47197 (M.D. Fla. Mar. 22, 2018) (Plaintiff's generalized fear of "convicted murderers" and "gang members" housed in his dormitory who could potentially harm him, rather than a specific and particularized threat of harm by either a specific inmate, cellmate, or group of inmates, was insufficient to state an Eighth Amendment claim); Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (merely negligent failure to protect an inmate from attack does not justify liability under section 1983).

Therefore, Foster's alleged use of the taser did not violate plaintiff's constitutional rights.  Graham, 490 U.S. at 396. See, e.g., Traylor v. City of Huntsville, No. 5:14-cv-01565-RDP-SGC, 2015 U.S. Dist. LEXIS 98172, at *6 (N.D. Ala. June 25, 2015) (finding that complaint fails to state a constitutional violation where the plaintiff was tased while engaged in a fight with another inmate, "a situation that easily could have escalated into a serious safety and security problem for the staff and other prisoners, and one which normally would require an immediate and forceful response by prison staff.").

### d.   No Supervisory Liability Against Sheriff Hill (Count II)

Absent an underlying constitutional violation by one of Sheriff Hill's employees, the Sheriff cannot be held liable under Section 1983.  Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (absent a violation of plaintiff's constitutional rights, sheriff and city entitled to summary judgment). Therefore, because plaintiff's complaint fails to allege an underlying constitutional violation as discussed above, plaintiff's supervisory claim against Sheriff Hill (Count II) is subject to dismissal for this reason alone.

Even if plaintiff's complaint alleges facts sufficient to establish an underlying constitutional violation by someone employed by the Sheriff, which it does not, plaintiff's supervisory liability claim against the Sheriff is still subject to dismissal. Indeed, "[i]t is well-established that § 1983 claims may not be brought

against supervisory officials on the basis of vicarious liability or respondeat superior." Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1180 (11th Cir. 2009). Rather, a supervisor can only be held liable under Section 1983 when "the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007). As shown below, plaintiff fails to allege sufficient facts to establish supervisory liability against Sheriff Hill.

### i.     No Personal Participation

Plaintiff does not allege any personal participation by Sheriff Hill whatsoever. (Doc. 1.) Plaintiff does not contend that Sheriff Hill himself used force or was personally involved with plaintiff. (Id.) Therefore, plaintiff's complaint fails to allege supervisory liability against the Sheriff under a personal participation theory.

### ii.    No Causal Connection

In addition, plaintiff does not allege facts to establish a "causal connection" between any actions of Sheriff Hill and any violation of his constitutional rights. The necessary causal connection can be established when: (1) a "history of widespread abuse" puts the supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's custom or policy results in

deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.  <u>Crosby</u>, 480 F.3d at 1270.

First, plaintiff does not allege a "history of widespread abuse" at the CCJ which put Sheriff Hill on notice of a need to correct a known deficiency and that he failed to do so.  While plaintiff alleges that Sheriff Hill has been indicted for the use of "the inmate restraint chair to inflict punishment on certain inmates" (Doc. 1, ¶ 43), plaintiff fails to allege any similarities between the use of the restraint chair on plaintiff and these prior incidents.  More importantly, plaintiff cites no prior incidents that resulted in a finding that anyone's constitutional rights have previously been violated by the use of the restraint chair at the CCJ.  Therefore, plaintiff fails to allege any facts that the Sheriff was on notice of a need to change any policies or training at CCJ and failed to do so.  <u>Watkins v. Willson</u>, 824 F. App'x 938, 941 (11th Cir. 2020) ("a plaintiff ordinarily must show a pattern of similar constitutional violations by untrained employees because [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Second, plaintiff fails to allege sufficient facts to show that a custom or policy of Sheriff Hill resulted in a deliberate indifference to plaintiff's constitutional rights.  (Doc. 1.)  Plaintiff alleges that Sheriff Hill was "grossly negligent in his supervision" and that he "has exhibited a pattern, policy, and custom of violation the rights of the citizens of Georgia" such that his employees' alleged misconduct "is affirmatively linked" to the Sheriff.  (Id., ¶¶ 16, 41.) Plaintiff also alleges that Sheriff Hill has a "pattern, policy, and custom" of unreasonably placing detainees in the restraint chair and permitting excessive use of force.  (Id., ¶ 42.)  Yet, plaintiff offers no factual allegations to corroborate these contentions, and these conclusory allegations are insufficient to state a claim.  See Smith v. Owens, No. 14-14039, 2015 WL 4281241, at *3 (11th Cir. July 16, 2015) (finding conclusory allegation of improper custom resulting in deliberate indifference insufficient to state a claim); McClendon v. City of Sumiton, Ala., No. 2:14-CV-00150-AKK, 2015 WL 2354187, at *3 (N.D. Ala. May 15, 2015) ("[C]onclusory allegations are insufficient to support a claim…for deliberate indifference, ratification, or purported 'custom and policy liability.'").

Finally, while plaintiff vaguely alleges that there are policies in place at the CCJ that are linked to the subject incident, and offers a generalized conclusion that it is the Sheriff's policy to employ deputies who are "prone to using unreasonable and excessive force against detainees" (Id., ¶¶ 44, 45), plaintiff has only alleged an

"isolated occurrence" which is insufficient to establish supervisory liability.  Harris v. Goderick, 608 F. App'x 760, 763 (11th Cir. 2015) ("[A] single isolated incident is insufficient to establish a custom or policy under § 1983."); Hawk v. Klaetsch, 522 Fed. Appx. 733 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse."); Braddy v. Florida Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.").

Plaintiff's complaint falls woefully short of establishing any constitutional violation by Sheriff Hill either personally or by any deliberate indifference. Therefore, plaintiff's supervisory liability claim is subject to dismissal for failure to state a claim.  See Faulkner v. Monroe Cnty. Sheriff's Dep't, 523 F. App'x 696, 701 (11th Cir. 2013) (finding that the plaintiff's claim based on the theory of supervisory liability was subject to dismissal because the plaintiff did not establish a causal connection between the defendant's actions and the alleged constitutional deprivation).

> e.    *No Deliberate Indifference To Medical Needs (Count IV)*

Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners.  Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997).  To prevail on this constitutional claim, a pretrial detainee must allege acts or omissions that rise to the level of "deliberate indifference."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "First, he must prove an objectively serious medical need.  Second, he must prove that the government official acted with deliberate indifference to that need."  Andujar v. Rodriguez, 486 F.3d 1199, 1203 (11th Cir. 2007) (internal citations and quotations omitted).  Applying this standard, plaintiff's claim against "defendants" is subject to dismissal.

While plaintiff's complaint appears to allege a "serious medical need" by virtue of his alleged brain injury, plaintiff must also allege facts establishing that each defendant acted with deliberate indifference to this serious medical need to state a claim.  "An official acts with deliberate indifference when that official knows that an inmate is in serious need of medical care but fails or refuses to obtain proper treatment."  Burley v. Upton, 257 F. App'x 207, 210 (11th Cir. 2007).  To prove deliberate indifference, a plaintiff must show: "(1) subjective

knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). "An inadvertent failure to provide adequate medical care'" is not sufficient. Faulkner v. Monroe Cnty. Sheriff's Dep't, 523 F. App'x 696, 700 (11th Cir. 2013); Burley, 257 F. App'x at 210. Furthermore, an official's failure to alleviate a significant risk that he should have perceived but did not cannot be condemned as the infliction of punishment. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Here, plaintiff alleges that he was placed in a "medical holding cell" with open wounds and that it was not until "[m]any hours later" that he was taken to the infirmary and then transported to Atlanta Medical Center where he was diagnosed with a brain injury. (Doc. 1, ¶¶ 30-33.) However, plaintiff does not allege facts to show that each defendant knew of plaintiff's brain injury and deliberately disregarded getting him treatment. Plaintiff's aggregate claim against all defendants, moreover, is insufficient to state a claim. Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005) ("the Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecified statement, but instead require the pleader to identify (albeit generally) the conduct of each defendant giving rise to his claims."); Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (finding a complaint is a "quintessential 'shotgun' pleading" where the "complaint is replete with allegations that 'the

defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.").

Finally, there is no allegation that plaintiff received his brain injury diagnosis at the CCJ or that any of the named defendants could have known of same.  In fact, plaintiff admits that he was not diagnosed with the brain injury until after he was taken to Atlanta Medical Center.  (Id., ¶¶ 32-33.)  Therefore, because plaintiff's complaint fails to allege facts to show that each defendant knew that plaintiff had a brain injury yet made a conscious and deliberate choice to do nothing – and in fact plaintiff alleges that he was treated by medical staff at the CCJ, taken to the infirmary, and then transported to Atlanta Medical Center (Id., ¶¶ 31-33) – plaintiff's deliberate indifference to a serious medical need claim is subject to dismissal.

## 2.      No Violation of Clearly Established Law

Even if plaintiff's complaint alleges sufficient facts to establish a constitutional violation, defendants are still entitled to qualified immunity because they did not violate clearly established law.  "[T]he purpose of the qualified immunity doctrine is to give meaning to the proposition that '[g]overnment officials are not required to err on the side of caution' when it comes to avoiding constitutional violations." See Crosby v. Monroe Cty., 394 F.3d 1328, 1334 (11th

Cir. 2004).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335 (1986).  It is a plaintiff's burden to overcome qualified immunity by pointing to specific actions of an officer which violate clearly established law.  Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). "This burden is not easily discharged: That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities."  Jones v. Ward, 514 F. App'x 843, 846-47 (11th Cir. 2013).

The Eleventh Circuit has held "many times" that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."  Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).  A "plaintiff cannot rely on general, conclusory allegations or broad legal truisms to show that a right is clearly established."  Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994); White v. Pauly, 137 S. Ct. 548, 552 (2017) (reiterating the longstanding principle that clearly established law should not be defined at a high level of generality and must be particularized to the facts of the case).  The law can be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the

Georgia Supreme Court.  Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 823 n. 4 (11th Cir. 1997).

Here, plaintiff alleges that the "conduct of Defendants violated clearly established statutory and constitutional rights."  (Doc. 1, ¶ 15.)  However, plaintiff fails to cite any controlling precedent particularized to the facts of this case that clearly establishes that plaintiff's placement in a restraint chair, any use of force, his medical treatment, or any conduct whatsoever on or around February 5, 2021 (the date alleged in the complaint) clearly violated plaintiff's constitutional rights. Nor would it have been obvious to every objectively reasonable government official that the conduct under the circumstances alleged in the complaint violates federal law.  Because plaintiff cannot sustain his burden of citing controlling and materially similar case law that would establish that <u>each</u> of the named defendants violated clearly established law, they are entitled to qualified immunity for this reason alone.

**B.**     **<u>Plaintiff's State Law Claims Are Barred By Official Immunity (Count III)</u>**

Plaintiff's state law claims must be dismissed because defendants are entitled to official immunity.  The doctrine of official immunity is enshrined in the Georgia Constitution.  <u>Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d)</u>.  Under the doctrine, "while a public officer or employee may be personally liable for his negligent *ministerial acts*, he may not be held liable for his *discretionary acts*

- 19 -

unless such acts are willful, wanton, or outside the scope of his authority." Gilbert v. Richardson, 264 Ga. 744, 752, 452 S.E.2d 476, 482 (1994) (citation omitted) (emphasis added); see Murphy v. Bajjani, 282 Ga. 197, 198, 647 S.E.2d 54, 65-57 (2007).  In other words, "a public officer or employee may be personally liable only for ministerial acts negligently performed or [discretionary] acts performed with malice or an intent to injure." Golden v. Vickery, 285 Ga. App. 216, 217, 645 S.E.2d 695, 696 (2007).

This immunity protects government employees' ability to act upon their judgment and discretion in the performance of their duties. See Cameron , 274 Ga. at 123, 549 S.E.2d at 344.  Whether a defendant is entitled to official immunity is a question of law that must be decided by the court as a "threshold issue." Id. at 124, 549 S.E.2d at 345.  As discussed below, because defendants were at all times performing discretionary acts without actual malice or actual intent to cause injury, they are each entitled to official immunity.

### 1.    Defendants Were Performing Discretionary Functions

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Common Cause/Georgia v. Cty. of Atlanta, 279 Ga. 480, 482, 614 S.E.2d 761, 764 (2005).  "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the

facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id.

Although plaintiff's state law count is difficult to discern given the shotgun nature of the allegations, plaintiff appears to be asserting state law claims of battery, assault, and "reckless conduct" against defendants Johnson, Stewart, Hawkins, Foster, Cannon, Evans, and Walker.  (Doc. 1, Count III, ¶ 55.)   In support of these claims, plaintiff asserts that defendants Johnson, Stewart, Hawkins, Foster, Cannon, Evans, and Walker allegedly restrained him and repeatedly struck him (Id., ¶¶ 49, 56), plaintiff criticizes Foster and Evans for placing him in a mental health holding cell with a "violent offender" (Id., ¶¶ 51, 53), and plaintiff challenges the alleged use of a taser by Foster (Id., ¶ 54). Georgia courts, however, have consistently held that these are the types of functions that are discretionary in nature.  See, e.g., Williams v. Boehrer, 530 F. App'x 891, 896 (11th Cir. 2013) (finding that for purposes of official immunity that use of force is a discretionary act); Harvey v. Nichols, 260 Ga. App. 187, 191-92, 581 S.E.2d 272, 276-77 (2003) (holding that the decision to place an inmate in a holding cell rather than the general population was discretionary).

### 2.    No Actual Malice Or Actual Intent To Injure

Because defendants were at all times performing discretionary functions, they are each entitled to official immunity unless plaintiff can show that they each

acted with "actual malice [which] requires a deliberate intention to do wrong and denotes express malice or malice in fact." Adams v. Hazelwood, 271 Ga. 414, 414-15, 520 S.E.2d 896, 898 (1999); Griswold v. Collins, 318 Ga. App. 556, 558, 734 S.E.2d 425, 427 (2012) ("actual malice requires a showing that the actor had a deliberate intention to do wrong…and that [w]illful conduct is based on an actual intention to do harm or inflict injury"). "[T]he actual malice necessary to overcome official immunity *must be the intent to cause the harm suffered by the plaintiff*." Campbell v. Goode, 304 Ga. App. 47, 49, 695 S.E.2d 44, 46 (2010) (emphasis added).

Here, nowhere in plaintiff's complaint does he allege any <u>facts</u> to show that defendants, each, acted with actual malice or the actual intent to cause plaintiff injury. (Doc. 1.)  Rather, plaintiff admits that he was combative and was shouting racial epithets to the Sheriff's deputies.  (Id., ¶ 23.) While plaintiff baldly alleges that defendants acted "intentional," "malicious," "with actual malice," "willful," "wanton," and "indifferent" (Id., ¶¶ 15, 49, 50), these legal conclusions without any factual support are insufficient to overcome official immunity.  Murphy, 282 Ga. at 203, 647 S.E.2d at 60 (finding that allegation of "malice" was insufficient to rise to the level of "actual malice" necessary to overcome official immunity); Harper v. Perkins, 459 F. App'x 822, 828 (11th Cir. 2012) ("we cannot rely on [plaintiff's] legal assertions of actual malice in the complaint" for purposes of a

motion to dismiss); <u>Davila v. Delta Air Lines, Inc.</u>, 326 F.3d 1183, 1185 (11th Cir. 2003) (stating that "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal"); <u>Richardson v. Quitman Cnty., Ga.</u>, 912 F. Supp. 2d 1354, 1381 (M.D. Ga. 2012) (noting that plaintiffs' reference to malicious intent in complaint did not impact the Court's decision on official immunity due the "utter lack of argument addressing specific acts of specific Defendants"). <u>See</u> <u>also</u> <u>Hanse v. Phillips</u>, 276 Ga. App. 558, 563, 623 S.E.2d 746, 750 (2005) <u>aff'd</u>, 281 Ga. 133, 637 S.E.2d 11 (2006) (finding that "[w]ilful, wanton and reckless conduct does not equate with the actual malice necessary to defeat a claim of official immunity").

In sum, plaintiff's complaint fails to allege any <u>facts</u> to show that defendants acted with actual malice or an actual intent to injure plaintiff and his legal conclusions are insufficient to survive a motion to dismiss. Plaintiff's state law claims, therefore, must be dismissed based on official immunity.

## C.   <u>No Viable Claim Against "John Doe" Defendants</u>

Although plaintiff has named as defendants "John Does 1-2," such claims are a nullity because "fictitious party practice is not permitted in federal court." <u>New v. Sports & Rec.</u>, 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997). Accordingly, the "John Doe" defendants must be dismissed.

**D.**   **Punitive Damages And Attorney's Fees Claims Subject To Dismissal**

Plaintiff has requested an award of punitive damages and attorney's fees against defendants.   (Count V and Prayer for Relief.)   However, should the underlying claims be dismissed, plaintiff's claims for attorney's fees and punitive damages would also be subject to dismissal.   See J. Andrew Lunsford Properties, LLC v. Davis, 257 Ga. App. 720, 722, 572 S.E.2d 682, 685 (2002) ("[T]he claims seeking attorney fees and punitive damages were properly dismissed as derivative of the other dismissed claims."); OFS Fitel, LLC v. Epstein, Becker & Green, P.C., 549 F.3d 1344, 1357 (11th Cir. 2008) (finding that plaintiffs' claims for punitive damages and attorney's fees cannot survive without an underlying claim against defendants).

Additionally, there are no factual allegations in the complaint of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" or bad faith or stubborn litigiousness to justify an award of punitive damages or attorney's fees under state law. Nor are there any factual allegations of "malice" or "reckless indifference" to plaintiff's federally protected rights that would justify an award of punitive damages against defendants under federal law. See Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999) (stating that "malice or . . . reckless indifference to the [plaintiff's] federally protected rights" justifies an award of

punitive damages under Section 1983); Reynolds v. CSX Transportation, Inc., 115

F.3d 860, 869 (11th Cir. 1997).  Therefore, defendants are entitled to dismissal of

plaintiff's claims for punitive damages and attorney's fees.

### III.   CONCLUSION

As shown above, plaintiff's complaint should be dismissed.

**FREEMAN MATHIS & GARY, LLP**

/s/ A. Ali Sabzevari
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

Attorneys for Defendants

/s/ Robert H. Citronberg
Robert H. Citronberg
Georgia Bar No. 126275
rcitronberg@gmail.com

303 Peachtree Street NE, Suite 4100
Atlanta, GA 30308
(404) 522-7450 (telephone)
(404) 577-0860 (facsimile)

Attorney for Defendant David Evans

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 8th day of October, 2021.

**FREEMAN MATHIS & GARY, LLP**

*/s/ A. Ali Sabzevari*
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record:

Alwyn R. Fredericks
Lisa E. McNary
Cash, Krugler & Fredericks, LLC
5447 Roswell Road, NE
Atlanta, GA 30342

Kurt Kastorf
Kastorf Law, LLC
1387 Iverson St. N.E., Suite 100
Atlanta, GA 30083

This 8th day of October, 2021.

**FREEMAN MATHIS & GARY, LLP**

*/s/ A. Ali Sabzevari*
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)