**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| GABRIEL ARRIES, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION FILE NO. 1:21-cv-03588-SDG |
| VICTOR HILL, RASHAWN JOHNSON, JAMES STEWART, Jr., JELANI FOSTER, MONTEZ HAWKINS, SYDNEY CANNON, DAVID EVANS, BENJAMIN WALKER, Jr., and John Does 1-2, in their individual capacities, | § § § § § § § § § | |
| Defendants. | § | |

## <u>GABRIEL ARRIES' RESPONSE TO</u> <u>DEFENDANTS' MOTION TO DISMISS</u>

In this civil rights action, Plaintiff Gabriel Arries (hereinafter "Gabriel"), alleges that after he was transported to Clayton County Jail in the midst of a mental health crisis, deputies at that facility struck him while he was still in handcuffs, used a restraint chair as a punishment, beat him again, maliciously threw him in a cell with Black inmates who had heard him use a racial epithet where he was beaten again, tased him, then ignored his obvious and severe medical injuries.

For a case that has not yet entered discovery, there is already a remarkable

1

amount of evidence in support of Gabriel's account. There is a whistleblower at the facility whose conscience compelled him to report the extreme abuse. There is the fact that one of the Defendants—directly responsible for supervising the others—is currently being prosecuted by the United States Department of Justice for the sort of conduct alleged in the complaint. And then, of course, there's the unavoidable fact that Gabriel has a severe traumatic brain injury from his beating.

Yet in Defendants' Motion to Dismiss, despite acknowledging that this case will turn on "a fact specific inquiry," argue that this Court can already determine with certainty that Defendants' conduct "was objectively reasonable under the totality of the circumstances." They assert that the Defendants "presumably" had a reasonable basis for doing what they did. And perhaps most remarkably, they argue that their "alleged conduct constituted a de minimis use of physical force," despite the fact that Gabriel has been diagnosed with a severe traumatic brain injury, subdural hematoma, subarachnoid hemorrhage, and a fracture of his nasal bone. Because portions of Defendants' motion border on frivolous and none of the motion meets the appropriate standard for the grant of a motion to dismiss, this Court should deny that motion.

## FACTUAL BACKGROUND

The essential facts in this matter are set out in paragraphs ¶¶ 20-40 of the Amended Complaint [#32] and will not be reproduced in full here. But in short, Plaintiff Gabriel Arries, who suffers from Bi-polar and Mood Disorder, was arrested on February 5, 2021, for misdemeanor disorderly conduct and transported to Clayton County Jail. #32, at ¶ 20. At intake, both a nurse and at least two of the defendants were informed of Gabriel's diagnoses and observed his symptoms. *Id.* at ¶¶ 21-22. In Gabriel's state of mind, he was allegedly combative and shouting racial epithets at the Sheriff's deputies. *Id.* at ¶ 23. Gabriel has alleged that the Sheriff's deputies became upset and angry at him for his conduct and racially-charged language, and, as a result, subjected him to a series of abuses, briefly summarized as follows:

- During an initial "ramp call," deputies pinned Gabriel to a wall, forced him to the ground, and struck him several times in the face while he was still handcuffed, causing serious and readily visible injury. #32, at ¶¶ 25-26.

- Deputies again beat Gabriel after moving him to a shower/dress out area and have offered inconsistent statements about whether Gabriel was handcuffed, whether he offered resistance, and, if he attempted to strike an officer, and, if he did so, which officer he allegedly attempted to strike. #32, at ¶¶ 27-30.

- Deputies then restrained Gabriel in a restraint chair for hours, despite that he appeared to be calm and offering no resistance. The supervisory defendant, Victor Hill, has a history of using the restraint chair as a punishment tool and is currently being prosecuted criminally for this practice. #32, at ¶¶ 30-31, 52.

- Deputies then again took Gabriel to the shower/dress out area where they again beat him. #32, at ¶31.

- The Defendants placed Gabriel on a suicide watch based on Gabriel's alleged statement that he wanted to kill himself, but another employee at the facility stated that Gabriel never stated suicidal ideations or took any other actions suggesting he was an immediate risk to himself. #32, at 32.

- The Defendants chose to place Gabriel in a holding cell that they knew to contain both violent inmates and specifically Black inmates who were aware of the fact that Gabriel had used racial epithets earlier. #32, at ¶¶ 33-34. As the Defendants easily could have predicted, placing Gabriel in that cell triggered a physical altercation in which Gabriel was again injured. #32, at ¶¶ 34-36. Defendants entered the cell and tased Gabriel. #32, at ¶ 37.

- The Defendants then moved Gabriel to his own holding cell. #32, at ¶ 37. At this point, Gabriel had open wounds on his face, was covered in feces, and in

obvious need of medical attention. #32, at ¶ 37. Despite that fact, Defendants

left Gabriel in the holding cell for hours, until they found him unresponsive

and making involuntarily movements. #32, at ¶ 38-39. It was only then that

Gabriel was taken to the infirmary. #32, at ¶ 40.

By the time Gabriel received needed medical care, he was permanently injured.

The physicians at Atlanta Medical Center diagnosed him with severe traumatic

brain injury, subdural hematoma, subarachnoid hemorrhage, and a closed fracture

of his nasal bone. #32, at ¶ 41. This lawsuit followed.

<div align="center">

**LEGAL STANDARD**

</div>

As the Supreme Court has noted, "Federal Rule of Civil Procedure 8(a)(2)

requires only 'a short and plain statement of the claim showing that the pleader is

entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[F]or the purposes

of a motion to dismiss [a court] must take all of the factual allegations in the

complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads

<div align="center">5</div>

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard

is not akin to a "probability requirement," but it asks for more than a sheer

possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.  "When

there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief." *Id*. at

679. However, "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable, and that a recovery is very

remote and unlikely." *Twombly*, 550 U.S. at 557 (internal quotation marks

omitted).

> To state a claim with sufficient specificity " 'requires a complaint with
> enough factual matter (taken as true) to suggest' the required element."
> The rule " 'does not impose a probability requirement at the pleading
> stage,' but instead 'simply calls for **enough fact to raise a reasonable**
> **expectation that discovery will reveal evidence of' the necessary**
> **element.'"**

*Secretary of Labor v. Labbe, 319* Fed. Appx. 761, 763 (11th Cir. 2008) (quoting

*Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) and *Twombly,*

550 U.S. at 556)) (emphasis added).

Plaintiff is required to plead only "enough factual content to nudge his claims

across the line from conceivable to plausible." *Speaker v. U.S. Dept. of Health &*

*Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1384-

86 (11th Cir. 2010) (citing *Twombly,* 550 U.S. at 570) (reversing dismissal because plaintiff's "allegations are not barren recitals of the statutory elements, shorn of factual specificity"). In evaluating the sufficiency of the pleadings post-*Iqbal*, courts are required to construe the complaint in the light most favorable to Plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). The "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). The allegations need not "compel" an inference of liability but need only "allow a reasonable factfinder to draw [that] inference." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 323 (11th Cir. 2009).

## ARGUMENT

### I.    Defendants Are Not Entitled to Qualified Immunity

Defendants first claim that they are entitled to qualified immunity on Gabriel's federal claims. Br. in Supp. of Mo. to Dismiss Plaintiff's Am. Compl. (hereinafter "Mo.") at 3-20. This argument flirts with frivolity, because Gabriel has plausibly alleged that Defendants injured him themselves, intentionally caused him to be injured by others, and ignored his obvious need for medical care in retaliation for Gabriel's unruly conduct and racial epithets. It is well-established that law

enforcement officers may not inflict pain and humiliation on someone as a form of extra-judicial retribution.

"Qualified immunity protects government officials performing discretionary functions from individual claims if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Porter v. Massarelli*, 303 Ga. App. 91, 93, 692 S.E.2d 722, 724 (2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To overcome the defense of qualified immunity, a plaintiff must show that the defendants had 'fair warning' of what the law required. 536 U.S. at 741. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). All that is required is that "in the light of pre-existing law, the unlawfulness must be apparent." *Id.*

For purposes of this motion, the only relevant facts are the allegations of the Amended Complaint, which must be taken as true at this juncture. *See Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) ("When ruling on a motion to dismiss, we accept the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor."). Here, Gabriel has alleged that the Defendants struck Gabriel more than was necessary, placed him in a restraint chair, and put

8

him in a cell with inmates they knew or should have known would injure him because they were upset and angry that Gabriel was being non-compliant and directing racial epithets at them. #23, at ¶ 24.

The Eleventh Circuit has already plainly stated that it is "clearly established that all infliction of excessive force on a prisoner" for the very purpose of causing harm (and which does, in fact, cause harm) violates the Constitution. *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (2002). Likewise, it is clearly-established and, indeed, a "core principle" of Eighth Amendment jurisprudence that "prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *Fikes v. Abernathy*, 793 Fed. Appx. 913, 918 (11th Cir. 2019). Because Gabriel has alleged that Defendants inflicted harm on him for the purpose of causing harm, and that they knew of the need for care but declined to provide it, Gabriel's allegations, which must be accepted as true, overcome a qualified immunity defense.

## II.    Gabriel Has Stated Valid Claims for Relief

In Defendants' brief, they embed within the qualified immunity section many pages of arguments that Gabriel has failed to state a claim. *See* Mo. at 4-18. To fit these arguments within the rubric of "qualified immunity," Defendants frame them

as addressing the first prong of qualified immunity, which is whether an underlying

Constitutional violation has occurred. This approach obscures the fact that this case

is currently before this Court on a motion to dismiss. Much of Defendants'

arguments consist of mere speculation that Gabriel will not ultimately be able to

prove his claim, which, of course, is irrelevant at this stage of the analysis. "[F]or

the purposes of a motion to dismiss [a court] must take all of the factual allegations

in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Indeed, Defendants often all but confess that their request for an immediate

victory is premature. For example, Defendants acknowledge that whether the

officers' decision to leave Gabriel in the restraint chair indefinitely was reasonable

is "a fact specific inquiry," Mo. 5, admitting that it is an issue which cannot be

resolved prior to discovery. Likewise, Defendants argue that the use of a taser was

reasonable because it was done "presumably to avoid injuries to plaintiff, his

cellmate, and others." Mo. at 10. At the risk of stating the obvious, if this Court

must draw a presumption in Defendants' favor in order to grant their motion to

dismiss, that motion to dismiss ought not be granted.

Instead of speculating whether Gabriel will ultimately be able to prove specific

allegations in the Amended Complaint, this Court should instead read the

document as a whole to see if Gabriel has plausibly alleged unconstitutional

conduct. A "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Here, viewed as a whole, Gabriel has stated claims to relief that are plausible on their face. *Twombly*, 550 U.S. at 570. Gabriel has set out a plausible motive for why the deputies would have wanted to hurt him—he was being combative and hurled racial epithets at him—and has presented allegations at least suggesting the use of force was unnecessary, including that the force was applied repeatedly over several episodes, Gabriel was unarmed and always hopelessly outnumbered, and that for at least some of the strikes, he was already on the ground, and/or handcuffed. In addition, at least some uses of force—such as when he was handcuffed or when the deputies elected to place him with Black inmates who knew he had recently used a racial epithet—cannot possibly be pared with any legitimate purpose. Even assuming *arguendo* that the Defendants had a reasonable basis for using force prior to restraining Gabriel (which, of course, this Court cannot assume *arguendo* on a motion to dismiss), their decision to continue striking him once restrained or to place him in a dangerous cell are indefensible.

Meanwhile, Gabriel's case is an unusually strong one at the pleading stage in two respects: First, the Amended Complaint cites to a Clayton County Jail

employee and witness who can corroborate Gabriel's account that the force used was excessive. #23, at ¶¶ 25, 30, 53. Second, one of the Defendants—with supervisory responsibility over the others—is currently being prosecuted criminally for adopting a practice of extrajudicial punishment of inmates in his care. #23, at ¶ 52. Combined allegations of confidential witnesses and an ongoing investigation are sufficient to prove an allegation plausible even in highly-complex claims, such as price fixing conspiracies. *See, e.g. In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1007 (E.D.Mich. 2010) (allegation that a price fixing conspiracy will be shown via "confidential witnesses" and is the "subject of several ongoing government investigations" survives *Twombly*.).

    A.    *Defendants' arguments about whether specific uses of force were, by themselves, unreasonable misstate the relevant inquiry.*

Defendants specifically argue that their use of force, use of a restraint chair, decision to place Gabriel in with a dangerous inmate, and use of a taser each do not, by themselves, constitute excessive uses of force. Mo. at 10. As an initial matter, this Court ought not engage in an allegation-by-allegation parsing of the complaint, but instead read the document as a whole to see if Gabriel has plausibly alleged unconstitutional conduct. A "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Viewed under the correct lens, all of Defendants' arguments fail for the same basic reasons. Even if under some circumstances, the conduct at issue could be constitutional, under the facts as alleged here they were not:

- Regarding Defendants' repeated uses of force on Gabriel, Defendants admit that "a fact specific inquiry" is necessary but then speculate that Defendants repeatedly beat Gabriel to "preserve internal order and discipline." Mo. at 5, 7. Conceivably, but Gabriel plausibly alleges they did so as retribution for Gabriel's conduct, an impermissible purpose.

- Defendants claim that where restraint chairs are not used as punishment, they do not violate the Constitution. Mo. at 7. But here, Gabriel alleges it was used as punishment, a particularly plausible allegation given that one Defendant is currently awaiting trial for using a restraint chair to punish inmates at Clayton County Jail. #23, at 52.

- Defendants claim that placing an inmate in a holding cell with another inmate is not always impermissible and cite to a case which says that placing a "high custody" inmate in a "low custody" dorm is not enough to show defendants' knowledge of potential harm. Mo. at 9. But here, Gabriel's allegations are far more specific, including that Defendants knew that the inmates they placed Gabriel were violent, had heard Gabriel use racial epithets earlier, and would be

predictably angry at him. #23, at 35-35. Gabriel is not seeking to make Defendants generally liable for injuries caused by other inmates, but instead only where he can prove the Defendants turned a blind eye to a specific risk they either knew or should have known about.

- Defendants argue that the taser use was objectively reasonable "under the totality of the circumstances," and "was justified for institutional safety and to break-up the altercation, and presumably to avoid injuries to plaintiff, his cellmate, and others." Mo. at 10. Here, Defendants are *explicitly* speculating at what the facts might show in discovery, which is reason enough that dismissal is premature.

Finally, Defendants' argument that the force used on Gabriel was de minimis as a matter of law warrants a specific response. Defendants claim that "under the totality of the circumstances, defendants' alleged conduct constituted a de minimis use of physical force" and thus was "objectively reasonable" as a matter of law. Mo. at 6-7. Defendants then cite to a number of cases holding that uses of force such as applying handcuffs, jerking someone up out of a chair, pushing someone's head into a van, requiring someone to raise their hands in the air, and searching someone's groin in an uncomfortable manner are not actionable as a matter of law because they are de minimis. *Id.* at n.2. For the absence of

14

confusion here, the allegation in this case is that Defendants beat Gabriel senseless until he suffered a severe traumatic brain injury and a brain hemorrhage from which he will never fully recover. Defendants' argument that the force used here was de minimis would be laughable, were it not offensive.

B.      *Gabriel alleges sufficient facts to subject Hill to liability.*

Defendants include several arguments specific to the claim against Defendant Hill, each of which fail. First, they argue that Hill cannot be subject to liability if his deputies committed no underlying constitutional violation. Mo. at 10-11. That argument fails because Gabriel has, in fact, stated an underlying constitutional violation.

Next, Defendants argue that because Gabriel does not allege that Hill personally participated in the conduct, Gabriel must be able to show a causal connection between Hill's actions and the underlying violation. Gabriel can do so here because he has alleged that Hill is well-aware of the use of tools such as a restraint chair as punishment and in fact Hill has personally been indicted (and is now awaiting trial) for using a restraint chair to punish inmates. #23, at ¶ 52. Hill's acquiescence to, encouragement of, and personal participation in the use of restraint chairs to punish is sufficient to suggest a causal connection.

Defendant specifically argues that Gabriel must allege a "history of

widespread abuse" in order to put Defendant Hill on notice of the need to correct a deficiency. Mo. at 12. But Gabriel must make no such allegation because the purpose of such an allegation is to tag Defendant Hill of *constructive* knowledge that inmates at his facility are being subject to abuse, and here Gabriel has alleged that Hill has *actual* knowledge that such abuse occurred because Hill personally abused other inmates in the same manner described in the complaint.

Even if Gabriel did need to allege widespread abuse, he has sufficiently done so. He has alleged that Hill's own participation in such abuse has created a culture in which deputies think such conduct is permissible. #23, at ¶ 52. And he has alleged that a former employee of Clayton County Jail states that he is aware of regular mistreatment of inmates and that Defendant Hill was in a position to receive those reports. #23, at ¶ 53. Then, he has alleged several specific examples or prior abuse. #23, at ¶¶ 54-60. Pretermitting whether proof of these allegations alone will be sufficient to survive summary judgment, they certainly provide enough facts "to raise a reasonable expectation that discovery will reveal evidence" of the necessary element. *Secretary of Labor v. Labbe,* 319 Fed. Appx. 761, 763 (11th Cir. 2008) (quoting *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) and *Twombly,* 550 U.S. at 556)) (emphasis added).

C.       *Gabriel has adequately alleged deliberate indifference to a serious medical need.*

Defendants next argue that Gabriel has insufficiently alleged deliberate indifference to a serious medical need because he has not included facts establishing that each and every defendant knew of the serious medical need. Mo. at 16. As an initial matter, he has. Gabriel alleges that after the deputies beat Gabriel the first time, he already had serious injuries that would have been readily apparent to any Defendant who observed him, and that he remained injured throughout the remainder of his time at the jail. #23, at ¶ 26. This allegation raises a reasonable inference that every Defendant who saw him at any point could have observed his need for medical attention.

But Defendants are wrong, in any event, that Gabriel must be able to identify exactly when each Defendant saw that he had visible head wounds and was coated in feces at this stage in the proceedings. Defendants cite to *Burley v. Upton*, 257 Fed. Appx. 207 (11th Cir. 2007) for the proposition that Gabriel's allegations must address each Defendant by name. Mo. at 16. But *Burley*, in addition to being an unpublished opinion, was decided on review of a grant of summary judgment, not a motion to dismiss. *Burley* does not establish that Gabriel must already know the facts with perfect certainty in his initial pleading. Whatever standard this Court chooses to adopt at summary judgment need not be met here, so long as there is a reasonable basis to believe that discovery will clarify which defendants saw

Gabriel and when they saw him.

## III.    Gabriel's Claims Are Not Barred by Official Immunity

Defendants next argue that Plaintiff's state law claims are barred by official immunity. This argument can be dispensed with quickly because Defendants themselves acknowledge that such immunity does not apply where the official actions were willful, wanton, or performed with an intent to injure. Mo. at 20. Here, Gabriel has specifically alleged that Defendants "acted with actual malice, were willful, wanton, indifferent, and deliberately disregarded Gabriel's statutory rights." #23, at ¶ 64, *see also id.* at ¶ 63 (alleging acts were "intentional and malicious). What is more, because Gabriel's allegations are that the Defendants intentionally struck him, proving his claim will necessarily defeat a claim to official immunity, since official immunity does not apply to *intended* injuries.

## IV.    Gabriel Can Proceed Against the John Doe Defendants

Defendants claim that this Court must dismiss the claims against John Does 1-2 because fictitious party practice is not permitted in federal court. Mo. at 24. This position misstates Eleventh Circuit law, which allows the naming of John Doe defendants in a complaint where their identity can be readily ascertained during discovery. *See, e.g., Sanders v. Duke*, 766 F.3d 1262, 1268 n.2 (2014); *see also Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992). Here, Gabriel has included

specific allegations about John Does 1-2 that will allow them to be identified during discovery and has alleged that they will be brought into this lawsuit once identified. #23, at ¶¶ 13-14. Gabriel also notes that John Doe practice is permissible specifically in cases alleging an excess use of force because the identity of the officer is not necessary to state a claim. *See Sanders*, 766 F.3d at 1268 n.2.

## V.   Gabriel Has Stated a Claim for Punitive Damages and Attorney's Fees

Finally, Defendants argue that because Gabriel's underlying claims fail, so do his claims for fees. Mo. at 24. But because Gabriel is entitled to proceed on the underlying claims, so too can he proceed on his fee claims.

Defendants also argue that the fee claims fail because Gabriel has alleged insufficient facts to support a finding of willful misconduct. Mo. at 24-25. But for the reasons stated *supra*, Gabriel has done so. He has alleged both that the Defendants here struck him because they were angry that he was non-compliant and hurled epithets, and that the Clayton County Jail had a routine practice of extrajudicial punishment of inmates. Those allegations are supported by the extensive and repeated beatings Gabriel received while in Defendants' care, his heinous medical injuries, an employee-informant, and the fact that Defendant Hill is the subject of Federal charges for abusing inmates. Finally, Defendants

acknowledge that actual malice is not necessary, and that "reckless indifference" would suffice. A jury could easily conclude that leaving Gabriel lying on the floor for hours, alone, with gaping head wounds and covered in his own feces, constituted reckless indifference to his plight. This Court should deny Defendants' motion to dismiss.

This 1<u>st</u> day of December, 2021.

CASH, KRUGLER & FREDERICKS, LLC

/s/ Alwyn R. Fredericks
ALWYN R. FREDERICKS, ESQ.
Georgia Bar No. 275092
LISA E. MCNARY, ESQ.
Georgia Bar No. 456926

5447 Roswell Road, NE
Atlanta, Georgia 30342
(404) 659-1710 [phone]
(404) 264-1149 [fax]
afredericks@ckf.law
lmcnary@ckf.law

KASTORF LAW, LLC

/s/ Kurt Kastorf
KURT KASTORF, ESQ.
*(w/ express permission signed by*
*Alwyn Fredericks, Esq.)*
Georgia Bar No. 315315

1387 Iverson St. N.E.,
Suite 100
Atlanta, GA 30083
(404) 900-0300 [phone]

kurt@kastorflaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1C, the undersigned counsel certifies that the foregoing has been prepared in Times New Roman 14 point, one of the four fonts and points approved by the Court in LR 5.1C.

<div style="margin-left: 40%;">

CASH, KRUGLER & FREDERICKS, LLC

<u>/s/ Alwyn R. Fredericks</u>
ALWYN R. FREDERICKS, ESQ.
Georgia Bar No. 275092
LISA E. MCNARY, ESQ.
Georgia Bar No. 456926

</div>

5447 Roswell Road, NE
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 [fax]
afredericks@ckf.law
lmcnary@ckf.law

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS** to the Clerk of Court

using the CM/ECF system which will automatically send electronic mail notification

of such filing to counsel of record who are CM/ECF participants:

Kurt Kastorf, Esq.
Kastorf Law, LLC
1387 Iverson St. N.E., Suite 100
Atlanta, GA 30083
kurt@kastorflaw.com

Jack Hancock, Esq.
A. Ali Sabzevari, Esq.
Freeman Mathis & Gary, LLP
661 Forest Parkway, Suite E
Forest Park, GA 30297
jhancock@fmglaw.com
asabzevari@fmglaw.com

This 1<u>st</u> day of December, 2021.

CASH, KRUGLER & FREDERICKS, LLC

/s/ Alwyn R. Fredericks
ALWYN R. FREDERICKS, ESQ.
Georgia Bar No. 275092
LISA E. MCNARY, ESQ.
Georgia Bar No. 456926

5447 Roswell Road, NE
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 [fax]

afredericks@ckf.law
lmcnary@ckf.law