IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GABRIEL ARRIES,                    )
                                   )
       Plaintiff,                  )
                                   )       CIVIL ACTION FILE NO.:
v.                                 )       1:21-CV-03588-AT
                                   )
VICTOR HILL, ET AL.                )
                                   )
       Defendants.                 )
                                   )

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**

The parties, through their counsel of record, file this Joint Preliminary

Report and Discovery Plan pursuant to Local Rule 16.2.

1.     **Description of Case**:

       **(a) Describe briefly the nature of this action.**

       This is a civil and constitutional rights action arising under 42 U.S.C

       1983 and the Fourteenth Amendment to the United States Constitution

       for the intentional, malicious, and reckless physical attacks and restraints

       of the Plaintiff. Plaintiff also brings state law claims for aggravated

       assault, aggravated battery and reckless conduct. Plaintiff further requests

       attorney's fees pursuant to 42 U.S.C 1988.

1

**(b) Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

**Plaintiff contends:** On February 5, 2021, Plaintiff Gabriel Arries, who suffers from Bi-polar and Mood Disorder and was off his medication, was arrested for misdemeanor Disorderly Conduct at Hartsfield-Jackson Airport by Atlanta Police Department and transported to the Clayton County Jail. Shortly after arriving at the Clayton County Jail, Defendant's Johnson, Stewart and a nurse observed Gabriel to have disorganized thoughts and was unaware that he was in the state Georgia. While disorganized and handcuffed, Gabriel allegedly started shouting racial epithets to the deputies. Thereafter, all deputies were called to the intake area and Defendant Johnson pinned Gabriel to the wall and forced him to the ground. Gabriel was then struck multiple times in the face while handcuffed causing visible injuries. Throughout the night, Gabriel was taken to the shower/dress out area on at least two (2) different occasions and maliciously beaten by Defendants while at least partially restrained. He was also placed in a restraint chair for hours after being beaten on at least two (2) different occasions. Gabriel was subsequently unjustifiably labeled as a suicide risk and placed in a mental health cell with known dangerous inmates who also attacked Gabriel. Gabriel was maliciously tased by Defendant Foster and then placed in a mental health cell alone despite his serious injuries which included open wounds. Gabriel

2

was also covered in fecal matter as he lost control of his bowels at some point. When Gabriel was found at approximately 8:00 in the morning, he was making involuntary movements. Gabriel was eventually transported to Atlanta Medical Center where he was diagnosed with a life-altering brain injury, subdural hematoma, subarachnoid hemorrhage and closed fracture of the nasal bone. Defendant Hill created a policy and/or custom of using excessive force and unreasonable restraints within the jail, negligently supervised Defendant subordinates, and was deliberately indifferent to violations of constitutional rights, and as a result, Defendants intentionally and maliciously attacked and restrained Gabriel repeatedly while he was in custody.

**Defendant Sheriff Hill contends**: On February 5, 2021, plaintiff Gabriel Arries ("plaintiff") was arrested by Atlanta Police Department officers at Hartsfield-Jackson International Airport on charges of disorderly conduct and obstruction of an officer. Plaintiff was transported to Clayton County Jail and held for a total of less than 14 hours.

Sheriff Hill did not personally participate in any of the events alleged in the complaint as amended. (Doc. 32.) Sheriff Hill further denies any and all liability for the claims asserted. Sheriff Hill contends that no customs, policies, training, or practices of the Sheriff's Office were the moving force behind any injuries allegedly suffered by plaintiff, and that he did not adhere to any customs, policies,

training, or practices with deliberate indifference to plaintiff's constitutional rights. Sheriff Hill further contends that he did not negligently supervise any of the named defendants. Sheriff Hill further asserts that he is entitled to qualified immunity.

**Defendant Rashawn Johnson contends:** This is a civil rights action arising from the aftermath of Plaintiff's arrest by the Atlanta Police Department ("ADP") at Hartsfield Jackson Airport for disorderly conduct and obstruction of an officer on February 5, 2021.   Late that evening, ADP officer Q. Tucker transported Plaintiff to the Clayton County Jail.   Defendant Johnson, who was working in the intake area of the jail, witnessed Plaintiff kicking and swinging at Officer Tucker through the glass doors between the intake area of the jail and the sallyport and, therefore, initiated a "ramp call," whereby he asked available officers to assist him with Plaintiff's intake into the jail.   Once the back-up officers arrived, the doors to the intake area were opened, and Defendant Johnson advised Plaintiff of the intake process.   Plaintiff then cursed at Defendant Johnson and kicked him in the left leg.

In effort to gain compliance of Plaintiff's legs, Plaintiff was transitioned to the floor.   The officers then assisted Plaintiff to his feet and began escorting him to the dress out area so that he could change into a jumpsuit.   Plaintiff remained belligerent and resisted escort, forcing the officers to carry him in a four-point hold for the rest of the way to the dress out area.   Once in the dress out area, Defendant Johnson informed Plaintiff that his handcuffs were going to be removed and asked

that he keep his hands behind his back.  After Defendant Stewart removed one of Plaintiff's handcuffs, Plaintiff punched Defendant Stewart in the face.  Plaintiff was again transitioned to the floor in an effort to gain compliance and put the cuff back on.

After being handcuffed, Plaintiff was placed in the Safety Restraint Chair to keep him from harming himself and others.  Nurse R. Estrill medically cleared Plaintiff for the Safety Restraint Chair, and an officer kept a 15-minute observation log while Plaintiff sat in the chair.  Once Plaintiff calmed down, he was removed from the chair.  Defendant Johnson and Plaintiff then walked back to the dress out area.  Defendant Johnson's shift ended shortly thereafter, and he had no further interactions with Plaintiff.

Defendant Johnson denies any and all liability, as well as the nature and extent of the alleged damages.  Defendant Johnson further asserts that he is entitled to both qualified and official immunity.

**Defendant James Stewart, Jr. contends:** On February 5, 2021, Atlanta police officers ("APD") arrested Plaintiff Gabriel Arries at the Hartsfield Jackson Airport for disorderly conduct and obstructing an officer.  APD then transported Plaintiff to the Clayton County Jail.  Defendant Stewart, who was on duty at that time,  received notification of a "ramp call," which requested that unoccupied personnel come assist at intake.

When he arrived at intake, Defendant Stewart witnessed Plaintiff being extremely irate and uncooperative, and looking like he had already been in some sort of physical altercation with APD.  After a period of time, during which Sgt Johnson attempted to instruct Plaintiff about jail procedure, Plaintiff kicked Sgt. Johnson, which caused the Plaintiff to be physically restrained.  Defendant Stewart assisted in restraining Plaintiff.

Defendant Stewart and other officers then attempted to escort Plaintiff to the "dress-out" room to be searched and issued jail attire.  However, Plaintiff soon refused to stand or walk, forcing Stewart and three other officers to carry him the rest of the way in a four-point hold.  While in the dress-out room, as Defendant Stewart took off one of Plaintiff's handcuffs so he could change into his jail issued jumpsuit, Plaintiff punched Defendant Stewart in the face and knocked off his glasses (causing his vision to be blurry), which elicited a defensive punch from Stewart that hit Plaintiff in the face area.  Other officers then immediately restrained the Plaintiff and, while Stewart was searching for his glasses, Plaintiff was placed in a safety restraint chair, which is a chair that immobilizes the inmate's legs and arms with straps.

Defendant Stewart immediately reported the incident with Plaintiff to his Lieutenant, who came to the dress-out room.  A jail nurse was called to check on Plaintiff and Plaintiff was taken by others to the infirmary. While in the safety

restraint chair in the dress-out area, Plaintiff exhibited no obvious signs of medical distress.  Defendant Stewart had no further contact or interaction with Plaintiff once Plaintiff was sent off to the infirmary, and had nothing further to do with Plaintiff.

Defendant Stewart denies any and all liability for the claims asserted against him, denies that he in any way used improper or excessive force against Plaintiff, and further asserts that he is entitled to both qualified and official immunities from suit in this action.

Defendant Stewart further alleges that Plaintiff is liable to Defendant Stewart under Georgia law for striking Defendant Stewart in the face and that Defendant Stewart is therefore entitled to damages against Plaintiff.

**Defendant Jelani Foster contends:** At approximately 12:30 a.m. on February 6, 2021, Sergeant Jelani Foster was on duty as a correctional officer when he encountered inmate Gabriel Arries in the infirmary at the Clayton County Jail. Other jailers had brought Arries to the infirmary in a restraint chair because Arries had reportedly been in an altercation and he appeared to be intoxicated.

Foster took Arries to the intake area, where he was interviewed by a clerk and booked into the jail. From there, Foster took Arries to the ID processing area where he was photographed and fingerprinted. Once those tasks were complete, Foster returned Arries to the infirmary and removed him from the restraint chair so that he

could be placed in a holding cell for mental health observation. Foster then resumed his duties in other areas of the jail.

Later, Foster heard a call for officers to respond to a fight between inmates in medical holding cell seven. When Foster arrived at the cell, he signaled for the cell door to be opened and observed Arries getting off the floor with blood on his face. As the door opened, Foster ordered all of the inmates to get on the floor, lay on their stomachs, and put their hands behind their backs. Arries failed to comply, and instead aggressively approached one of the other inmates in an apparent attempt to fight him.

Although the other inmates had complied with Foster's orders, Arries did not. Foster withdrew his county-issued X26 Taser, gave multiple orders to Arries to lay on the floor and place his hands behind his back, and warned Arries that he would be tased if he did not comply. When Arries again refused to comply with Foster's commands, Foster deployed his Taser in prong mode for a five-second cycle. Arries fell to the floor, allowing Foster to place handcuffs on him. Arries defecated during this incident, but because he was clothed only in a paper smock, the feces fell on the floor of the cell without soiling his body.

Foster immediately called for medical staff to remove the Taser prongs from Arries. One of the prongs was in his upper arm area, and the other was on his torso. Arries had sustained superficial cuts in his altercation with the other inmates, and so a nurse cleaned and treated the wounds and checked his vital signs. After a nurse

medically cleared Arries, Foster placed him alone in medical holding cell 20 so that Arries could remain under observation by medical personnel and avoid further conflicts with other inmates. Foster instructed other correctional officers and medical staff to check on Arries periodically.

**Defendant Montez Hawkins contends:**[1]

**Defendant Sydney Cannon contends:** On February 5, 2021, Defendant Sydney Cannon was working in the Clayton County Jail and was assigned as the Housing Sergeant. At some point after 9:00 PM, while working in the intake area, Cannon heard a "Ramp Call" related to Plaintiff Arries, who was not being compliant. As Arries was brought into the jail, he was led through the intake-area into the dress-out area so that he could be immediately clothed in a jail uniform. Defendant Cannon followed the other officers and Arries into the dress-out area because Plaintiff Arries was being verbally aggressive.

When Plaintiff Arries came into the jail, he was in handcuffs; however, the handcuffs were removed once he was taken to the dress-out area so that he could put on his jail uniform. While there, he became physically aggressive and was transitioned to the floor, where he continued being physically combative and creating a risk of injury to the deputies. In an effort to gain Plaintiff's compliance,

---

[1] Defendant Montez Hawkins' proposed counsel has not been able to establish contact yet. An amended Joint Preliminary Report and Discovery Plan will be submitted once Defendant Hawkins has answered and filed initial disclosures.

Defendant Cannon delivered four strikes to Plaintiff Arries' torso. As soon as he stopped resisting, he was placed in a restraint chair and taken to medical for assessment.

Thereafter, Defendant Cannon did not have any additional contact with Plaintiff.

**Defendant David Evans contends**: On February 6, 2021, Evans was the Morning Watch Intake Security supervisor during the incident which gives rise to this complaint.  At approximately 12:15 hours, Sgt. R. Johnson and Ofc. Walker escorted Arries to the Intake dressing area area. Sgt.  Johnson notified Sgt. Evans of a situation in the dress out area.  When Sgt. Evans arrived, Arries was on the floor in handcuffs.  Ofc. Walker informed Sgt. Evans that Arries attempted to exit the shower area, against the officers' commands, refused to comply with his commands, became aggressive and attempted to strike Ofc. Walker in his face. Ofc. Walker explained he took control of Arries' upper body and had to take him down to the floor. Sgt. Evans advised Arries should be placed in a safety restraint chair due to his aggressive actions.  Once the chair was retrieved, Arries was placed in the restraint chair with no further incident and medically cleared to remain in the chair by Nurse R. Estilla.

Ofc. Walker escorted Arries to the infirmary dayroom and a 15-minute observation log was started.  Officers attempted to help process Arries.  Arries

refused to answer any medical questions but made a comment that he wanted to kill himself.  Therefore, Arries was transported to medical holding cell seven for observation under a "53 watch". Once placed in cell seven, Arries lay down on the floor and no further incident occurred.  Sgt. Evans returned back to his station and continued his work.

At approximately, 3:45 AM, Officer Zachary radioed Central Control advising of a signal 29 between two inmates inside medical holding cell seven.  By the time Sgt. Evans had arrived at the cell, Sgt. Foster had deployed his taser.  Sgt. Foster handcuffed Arries.  Sgt. Evans observed Arries was covered in feces.  With Arries being secured, medical staff cleared Arries.

Sgt. Evans denies that any of his conduct during the incident caused any of Arries' alleged injuries or that he breached a duty owed to Arries under the circumstances he faced.  Sgt. Evans expressly denies that he acted with any malice towards Arries at any time during his limited interaction with Arries.  Lastly, Sgt. Evans states he lacked any opportunity to intervene in any of the alleged conduct of any other individual which Arries alleges gives rise to this action.

**Defendant Benjamin Walker, Jr. contends**: On February 6, 2021, Defendant Walker was assigned as Morning Watch Intake Security Officer. At approximately 12:15 a.m. Sergeant Johnson escorted Plaintiff into Intake to be dressed out in a County jail uniform. Walker entered the dress out area with

11

Sergeant Johnson and Plaintiff. When Walker removed his handcuffs, Plaintiff immediately tried to exit the shower area. Walker instructed Plaintiff to remain in the shower area, but Plaintiff continued to step out of shower area, causing Walker to have to physically restrict him from exiting the shower area. Plaintiff became aggressive and attempted to strike Walker in his face, so Walker used an arm bar to take control of Plaintiff's upper body and placed him on the floor. Plaintiff was then handcuffed without further incident, and Walker placed him in the restraint chair and secured all of the straps attached to the chair. Plaintiff was medically cleared to remain in the restraint chair by Nurse Estrill. Walker then escorted Plaintiff to the infirmary dayroom, where a 15-minute observation log was started and officers began trying to process Arries.

Defendant Walker had no other interaction with Plaintiff and never used gratuitous or excessive force against him. Defendant Walker denies all liability and asserts that he is entitled to both qualified and/or official immunity from any claims against him.

**The legal issues to be tried are as follows:**

**<u>Plaintiff contends</u>:**

1. Whether Defendants violated Plaintiff's Constitutional rights;

2. Whether Defendants are liable to Plaintiff for the violation of his Constitutional rights;

3. Defendants use of force against Plaintiff and whether it was carried out with actual malice;

4. Defendant Hill's supervisory liability for his deputies' malicious acts;

5. Whether Defendants are liable to Plaintiff for the commission of various torts including battery, aggravated assault and reckless conduct;

6. Whether Plaintiff is entitled to damages and the amount thereof;

7. Whether Plaintiff's claims are barred by any of the defenses asserted by the Defendants, including Defendants' immunity defenses.

**Defendant Sheriff Hill contends:**

1. Whether defendant is liable for any of the claims asserted in the complaint.

2. Whether plaintiff's claims are barred by qualified immunity.

3. Whether defendant violated plaintiff's constitutional rights.

4. Whether plaintiff can prove that defendant is subject to liability under 42 U.S.C. § 1983.

5. Whether defendant is liable for plaintiff's claims of damages.

**Defendant Rashawn Johnson contends:**

1. Whether Defendant Johnson violated any clearly established constitutional rights of Plaintiff;

2.      Whether Defendant Johnson can be held liable under 42 U.S.C. §

1983;

3.      Whether Defendant Johnson is entitled to qualified immunity as to

Plaintiff's federal claims;

4.      Whether Defendant Johnson can be held liable for aggravated battery

under O.C.G.A. § 16-5-24;

5.      Whether Defendant Johnson can be held liable for aggravated assault

under O.C.G.A. § 16-5-21;

6.      Whether Defendant Johnson can be held liable for reckless conduct

under O.C.G.A. § 16-5-60(b);

7.      Whether Defendant Johnson is entitled to official immunity as to

Plaintiff's state law claims; and

8.      Whether Plaintiff is entitled to the requested relief.

**<u>Defendant James Stewart, Jr. contends</u>:**

1.  Whether defendant Stewart is liable for any of the claims asserted in the

complaint.

2.  Whether plaintiff can prove that defendant Stewart is subject to liability

for alleged violations of the United States Constitution pursuant to 42

U.S.C. § 1983.

3.  Whether plaintiff can prove that defendant Stewart is subject to liability for alleged violations of Georgia law.

4.  Whether plaintiff's federal law claims against Defendant Stewart are barred by the federal doctrine of qualified immunity.

5.  Whether plaintiff's state law claims against Defendant Stewart are barred by the Georgia doctrine of official immunity.

6.  Whether plaintiff is entitled to any damages from defendant Stewart.

7.  Whether plaintiff is liable to defendant Stewart under Georgia law.

8.  Whether defendant Stewart is entitled to damages from plaintiff.

**<u>Defendant Jelani Foster contends</u>:**

1.    Whether Jelani Foster violated plaintiff's rights under the United States Constitution and committed assault and battery against plaintiff;

2.    Whether Jelani Foster is entitled to qualified immunity from plaintiff's federal claim against him;

3.    Whether the actions of Jelani Foster violated Georgia law;

4.    Whether Jelani Foster is entitled to official immunity for plaintiff's state-law claim; and

5.    Whether plaintiff is entitled to damages, and if so, the extent of such damages, including punitive damages.

15

**Defendant Montez Hawkins contends:**

**Defendant Sydney Cannon contends:**

1.      Whether Sydney Cannon violated Plaintiff Arries' rights under the United States Constitution.

2.      Whether Sydney Cannon is entitled to qualified immunity from Plaintiff's federal claims.

3.      Whether the actions of Sydney Cannon violated Georgia law;

4.      Whether Sydney Cannon is entitled to official immunity from Plaintiff's state-law claim; and

5.      Whether Plaintiff is entitled to damages, and if so, the extent of such damages, including punitive damages

**Defendant David Evans contends:**

1.      Whether David Evans violated Plaintiff's rights under the United States Constitution.

2.      Whether David Evans is entitled to qualified immunity from Plaintiff's federal claims.

3.      Whether the actions of David Evans' violated Georgia law;

4.      Whether David Evans is entitled to official immunity from Plaintiff's state-law claim; and

5.      Whether Plaintiff is entitled to damages, and if so, the extent of such damages, including punitive damages.

**Defendant Benjamin Walker, Jr. contends:**

1.      Whether Defendant Walker violated Plaintiff's rights under the United States Constitution and federal law and committed assault and battery against Plaintiff;

2.      Whether Defendant Walker is entitled to qualified immunity from Plaintiff's federal claims against him;

3.      Whether the actions of Defendant Walker violated Georgia law;

4.      Whether Defendant Walker is entitled to official immunity from Plaintiff's state-law claim; and

5.      Whether Plaintiff is entitled to damages, and if so, the extent of such damages, including punitive damages.

**(c) The cases listed below (include both style and action number) are:**

**(1) Pending Related Cases:** State of Georgia v. Gabriel James Arries, 2022CR05033-SM, State Court of Clayton County; United States

17

of America v. Victor Hill, 1:21CR-143, United States District Court for the Northern District of Georgia.

**(2)****Previously Adjudicated Related Cases:** n/a

**2. This case is complex because it possesses one or more of the features listed below (please check):**

____X____ (1)  Unusually large number of parties

_____ (2)  Unusually large number of claims or defenses

_____ (3) Factual issues are exceptionally complex

____X____ (4) Greater than Normal Volume of evidence (Plaintiff Contends)

____X____ (5) Extended discovery period is needed

___X____ (6) Problems locating or preserving evidence (Plaintiff Contends)

___X____ (7) Pending parallel investigations or action by government

___X____ (8) Multiple use of experts

_____ (9) Need for discovery outside United States boundaries

_____(10) Existence of highly technical issues and proof

_____(11) Unusually complex discovery of electronically stored information.

**3. Counsel:**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

**Plaintiff:**                                    Alwyn R. Fredericks, Lisa E. McNary
                                                    and Kurt Kastorff

| | |
|---|---|
| **Defendant Sheriff Hill:** | Jack R. Hancock, A. Ali Sabzevari and Chandler Emmons |
| **Defendant Rashawn Johnson:** | Karen E. Woodward and Cameron Boone |
| **Defendant James Stewart, Jr.:** | Howard W. "Tres" Indermark |
| **Defendant Jelani Foster:** | Brian Dempsey |
| **Defendant Montez Hawkins:** | |
| **Defendant Sydney Cannon:** | G. Kevin Morris |
| **Defendant David Evans:** | Matthew H. Bennett |
| **Defendant Benjamin Walker, Jr.:** | Frances L. Clay |

4. <u>**Jurisdiction:**</u>

**Is there any question regarding this Court's jurisdiction?**

   **___ Yes**         **__X__ No**

**If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

5. <u>**Parties to this Action:**</u>

**(a) The following persons are necessary parties who have not been joined:**

19

None known at this time.

**(b) The following persons are improperly joined as parties:**  None.

**(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

None.

**(d) The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6.  Amendments to the Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of FED. R. CIV. P. 15.  Further instructions regarding amendments are contained in LR 15.**

**(a) List separately any amendments to the pleadings that the parties anticipate will be necessary:** Pursuant to the Court's Order (Doc. 47, n. 2), Plaintiff's deadline to specifically identify the two John Doe Defendants referenced in his amended complaint shall be thirty (30) days after the Joint Preliminary Report and Discovery Plan has been filed.

As discovery progresses, Plaintiff may add Defendants who Plaintiff claims violated his Constitutional rights as they are discovered in place of the John Doe Defendants.

(b) **Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan has been filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

7.  <u>**Filing times for Motions**</u>**:**

**All motions should be filed as soon as possible.  The local rules set specific filing limits for some motions.  These times are restated below.**

**All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later.   Local Rule 7.1A (2).**

(a) <u>**Motions to Compel**</u>**: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.**

(b) <u>**Summary Judgment Motions**</u>**: within thirty (30) days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.**

(c) <u>**Other Limited Motions**</u>**: Refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions**

**pending on removal, emergency motions, and motions for reconsideration.**

(d) **Motions Objecting to Expert Testimony**: **Daubert** **motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.**

8. **Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with FED. R. CIV. P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.  NOTE: Your initial disclosures should include electronically stored information. Refer to FED. R. CIV. P. 26(a)(1)(B).**

9. **Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.**

The parties do not request a scheduling conference at this time.

10. **Discovery Period:**

**The discovery period commences thirty (30) days after the appearance of the first defendant by answer to the complaint. As stated in LR**

**26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.**

**Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is a contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.**

This case was assigned to the four month discovery track, ending February 12, 2023. The Parties having conferred via their Rule 26(f) Early Planning Conference held on September 23, 2022, agree that a longer discovery period would be appropriate, and therefore request eight months of discovery, commencing October 12, 2022 (answer deadline) and running through June 12, 2023. Parties further agree to electronic service of discovery materials.

**Please state below the subjects on which discovery may be needed:**

Plaintiff contends:

(a)     The factual basis of the claims asserted against defendants.

(b)     The factual basis for defendants' defenses and immunities.

(c)    The factual basis of plaintiff's alleged damages.

<u>Defendants contend</u>:

(a)    The factual basis of the claims asserted against defendants.

(b)    The factual basis for defendants' defenses and immunities.

(c)    The factual basis of plaintiff's alleged damages.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phase or be limited to or focused upon particular issues, please state those reasons in detail below:**

The Parties having conferred via their Rule 26(f) Early Planning Conference held on September 23, 2022, agree that a longer discovery period would be appropriate, and therefore request eight months of discovery, commencing October 12, 2022 (answer deadline) and running through June 12, 2023.

11. **<u>Discovery Limitation and Discovery of Electronically Stored Information</u>:**

(a) **What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this court, and what other limitations should be imposed?**

The parties agree that discovery material (both requests and responses) may be served via electronic means and that no party requires service via hardcopy.

**(b) Is any party seeking discovery of electronically stored information?**

<u>  X      </u>Yes        <u>          </u>No

  **If "yes,"**

**(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**  None known at this time.

**(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:** Electronic information that can be produced in PDF or paper format will be produced on a compact-disk or via a cloud based software. The parties reserve the right to seek electronic information through any additional manner. The parties agree to provide reasonable notice of the need for an additional production method.

(3) **In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.** The parties have come to a general agreement regarding the discovery of electronically stored information; therefore, the parties will not require a scheduling conference. However, the parties reserve the right to request a conference should it become necessary.

12. **Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?** None at this time.

13. **Settlement Potential:**

(a) **Counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on** September 23, 2022 **and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.**

**For Plaintiff:**

**Lead counsel (signature):** */s/ Alwyn R. Fredericks*
                                                       Alwyn R. Fredericks


**For Defendant Sheriff Hill:**

**Lead counsel (signature):** *_/s/ Jack R. Hancock_*
                              Jack R. Hancock


**For Defendant Rashawn Johnson:**

**Lead counsel (signature):** *_/s/ Cameron Boone_*
                              Cameron Boone


**For Defendant James Stewart, Jr.:**

**Lead counsel (signature):** *_/s/ Howard W. "Tres" Indermark_*
                              Howard W. "Tres" Indermark


**For Defendant Jelani Foster:**

**Lead counsel (signature):** *_/s/ Brian Dempsey_*
                              Brian Dempsey


**For Defendant Montez Hawkins:**

**Lead counsel (signature):** ____


**For Defendant Sydney Cannon:**

**Lead counsel (signature):** *_/s/ G. Kevin Morris_*
                              G. Kevin Morris


**For Defendant David Evans:**

**Lead counsel (signature):** *_/s/ Matthew H. Bennett_*
                              Matthew H. Bennett

**For Defendant Benjamin Walker, Jr.:**

**Lead counsel (signature):** */s/ Frances L. Clay*
                                             Frances L. Clay

**(b) All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

**(__)  A possibility of settlement before discovery.**

**( X )  A possibility of settlement after discovery.**

**(__)  A possibility of settlement, but a conference with the judge is needed.**

**(__)  No possibility of settlement.**

**(c)  Counsel ( X ) do or (__) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.   No proposed date for the next settlement conference has been set.**

**(d)    The following specific problems have created a hindrance to settlement of this case.**  No specific problems.

**14.  Trial by Magistrate Judge:**

**Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

**(a) The parties (__) do consent to having this case tried before a**

**magistrate judge of this Court. A completed Consent to Jurisdiction by United States Magistrate Judge form has been submitted to the clerk of court this _____ day _____, of 20\_\_\_\_.**

**(b) The parties (<u>X</u>) do not consent to having this case tried before a magistrate judge of this Court.**

Respectfully submitted this the 12th day of October, 2022.

FREEMAN MATHIS & GARY, LLP

*/s/ A. Ali Sabzevari*
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com
Chandler J. Emmons
Georgia Bar No. 310809
cjemmons@fmglaw.com

661 Forest Parkway, Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

Attorneys for Sheriff Victor Hill

*/s/ Cameron Boone*
Cameron Boone
Georgia Bar No. 811119
cboone@cmlawfirm.com

Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA
(678) 684-1781 (telephone)

Attorney for Defendant Rashawn Johnson

*/s/* Howard W. "Tres" Indermark
Howard W. "Tres" Indermark
Georgia Bar No. 005848
indermarklaw@yahoo.com

Howard Indermark Attorney at Law, LLC
P.O. Box 223
Avondale Estates, Georgia 30002
(404) 409-8492 (telephone)

Attorney for Defendant James Stewart, Jr.

*/s/ Brian Dempsey*
Brian Dempsey
Georgia Bar No. 217596
Brian.dempsey@carmitch.com

Carothers & Mitchell, LLC
1809 Buford Highway
Buford, GA 30518
(770) 932-3552 (telephone)

Attorney for Defendant Jelani Foster

WILLIAMS, MORRIS & WAYMIRE, LLC

*/s/ G. Kevin Morris*
G. Kevin Morris
Georgia Bar No. 523895
Attorney for Defendant Sydney Cannon

30

Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30518
678-541-0790
678-541-0789
kevin@wmwlaw.com


                        Attorney for Defendant Sydney Cannon


                        */s/Matthew H. Bennett*
                        MATTHEW BENNETT
                        Georgia Bar No. 123408
                        mhb@bennettlawofficellc.com

1012 Memorial Drive, Suite 13
Griffin, Georgia 30224
(678) 688-3554 (telephone)
(678) 688-3555 (fax)


                        Attorney for Defendant David Evans


                        */s/ Frances L. Clay*
                        Frances L. Clay
                        Georgia Bar No. 129613
                        fclay@chrkglaw.com

Chambless, Higdon, Richardson, Katz & Griggs, LLP
P.O. Box 18086 / 3920 Arkright Rd., Ste. 405
Macon, GA 331209-8086 / 31210
(478) 745-1181 (telephone)
(478) 746-9479 (fax)


                        Attorney for Defendant
                        Benjamin Walker, Jr.

/s/ Alwyn R. Fredericks
Alwyn R. Fredericks
Georgia Bar No. 275092
afredericks@ckf.law
Lisa E. McNary
Georgia Bar No. 456926
lmcnary@ckf.law

Cash, Krugler & Fredericks, LLC
5447 Roswell Rd.
Atlanta, GA 30342
(404) 659-1710 (telephone)

Attorneys for Plaintiff

* * * * * * * * * * * *

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

IT IS SO ORDERED, this _____ day of _____, 2022.

_____
HONORABLE AMY TOTENBERG
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **JOINT PRELIMINARY REPORT AND DISCOVERY PLAN** to the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to counsel of record.

This 12th day of October, 2022.

/s/ A. Ali Sabzevari
A. Ali Sabzevari
Georgia Bar No. 941527

FREEMAN MATHIS & GARY, LLP
661 Forest Parkway
Suite E
Forest Park, Georgia  30297-2257
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)